IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | |
| **ZACHARY ELLIS,** | Criminal Action No. 1:25-cr-147 (AJT) |
| *Defendant.* | |

## DEFENDANT'S OPENING BRIEF ON APPEAL

Defendant Zachary Ellis appeals his misdemeanor conviction for violating 32 C.F.R. § 234.10(a)(1). Mr. Ellis seeks reversal of the Magistrate Judge's decision to deny his renewed Rule 29 Motion for Judgment of Acquittal because the Government failed to prove beyond a reasonable doubt that Mr. Ellis willfully violated § 234.1(a)(1). In the alternative, Mr. Ellis asks this Court to reverse the conviction and remand the case to the Magistrate Judge for further proceedings to determine whether Mr. Ellis's conduct was willful.

## JURISDICTION

The Magistrate Judge had jurisdiction over this criminal matter pursuant to 18 U.S.C. §§ 3231 and 3401. U.S. Magistrate Judge William E. Fitzpatrick entered a Judgment of Conviction on May 2, 2025. *See* Case No. 1:25-po-200, Doc. No. 24. Mr. Ellis filed his notice of appeal on May 14, 2025. *See* Case No. 1:25-po-200, Doc. No. 27. Accordingly, this Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3231 and 3402.

## FACTUAL BACKGROUND

### I.  Mr. Ellis's Arrest

On December 17, 2024, while driving to the Costco Warehouse located at 1200 S. Fern St., Arlington, VA 22202, Mr. Ellis was pulled over by Pentagon Force Protection Agency Police Officer, Giovanni Aduilar, on a section of Fern Street that briefly crosses through the Pentagon reservation. Ex. A, Trial Tr. 8:2-4. Officer Aduilar informed Mr. Ellis that he had stopped him for driving while using his cellphone, *id.* 9:6-7, and through a routine National Crime Information Center search, determined that Mr. Ellis had an outstanding warrant. *Id.* 9:21-25. Officer Aduilar detained Mr. Ellis while he confirmed the details of the warrant, which ultimately came back as a non-extraditable warrant issued out of Ohio. *Id.* When Officer Aduilar removed Mr. Ellis from the vehicle, he asked Mr. Ellis if he could search the vehicle. *Id.* 10:9-13. Mr. Ellis declined the search, so Officer Aduilar spoke to the passenger, who stated that Mr. Ellis had a firearm in the car. *Id.* 10:7-20. Officer Aduilar searched the vehicle, where he discovered a loaded 9mm Smith & Wesson firearm and a small amount of legal marijuana. *Id.* 11:3-6, 24. Officer Aduilar then placed Mr. Ellis under arrest, who became frustrated and expressed his emotions verbally and through his body language. *Id.* 11:23-24; 12:18-13:18. Officer Aduilar issued Mr. Ellis two citations, one charging him with possession of a weapon in violation of 32 C.F.R. 234.10(a)(1), Case No. 1:25-po-200, Doc. No. 1, and one charging him with using a handheld device while driving in violation of V.S.C. 46.2-818.2, Case No. 1:25-po-200, Doc. No. 3.

### II.  Procedural History

On May 1, 2025, Judge Fitzpatrick conducted a bench trial and heard testimony from Officer Aduilar and Roberto Rivera ("Investigator Rivera"), who is an investigator with the Office of the Federal Public Defender. Officer Aduilar described his interaction with Mr. Ellis, including Mr. Ellis's demeanor during the stop. Ex. A, Trial Tr. 12:4-13:18. Investigator Rivera testified

2

regarding his investigation of the route that Mr. Ellis took to Costco to determine whether there were signs along that route indicating the boundary of the Pentagon reservation and/or signs indicating that weapons were prohibited on the reservation. *Id.* 26:4-16. To support Investigator Rivera's testimony, the defense also submitted as exhibits: (1) an aerial view of the route Mr. Ellis (and Investigator Rivera) took, printed from Google maps; and (2) a print-out of the Google maps "street view" of a large sign and a small sign located along Mr. Ellis's route on South Rotary Road, which fairly and accurately depicts what Investigator Rivera saw while he was driving. *Id.* 24:18-25:15; 26:17-28:6; Ex. B. Investigator Rivera testified that he was able to read the larger sign while driving, which states, "You are now entering the Pentagon reservation. All vehicles, packages, and other containers are subject to search. Unauthorized photography is prohibited." Ex. A, Trial Tr. 27:15-25; Ex. B. Investigator Rivera was not, however, able to read the smaller sign while driving, despite slowing down to "just short of a stop." Ex. A, Trial Tr. 28:1-12. This smaller sign, which is posted directly underneath the larger sign, appears to be a small-text printout of the entirety of 32 C.F.R. § 234. *See* Ex. B. Investigator Rivera further testified that he saw no other such signs along the route, and that there was no opportunity for drivers to avoid entering the Pentagon reservation after seeing the two signs, Ex. A, Trial Tr. 28:16-29:7.

At the end of the Government's case, Mr. Ellis moved for a judgment of acquittal pursuant to Fed. R. Crim. P. Rule 29, which Judge Fitzpatrick denied because "the Government has presented evidence to satisfy each essential element of both charges . . . ." *Id.* 22:19-23:3. At the close of trial, Mr. Ellis renewed his Rule 29 motion, arguing that the Government had not met its burden with respect to the elements of the firearms offense and/or had failed to rebut "an affirmative defense of notice." *Id.* 34:1-19. Specifically, Mr. Ellis argued that "the notice that having a weapon on the [Pentagon reservation] was prohibited was not sufficient notice . . . And .

. . there's no way to avoid entering the reservation once the sign is observed, [so] even if he had been able to read the smaller sign, there was no way to undo what he had already began." *Id.* 35:3-15. Judge Fitzpatrick again denied the motion, finding that adequate notice is not a requirement of the regulation or any relevant statute, and that any larger constitutional issue related to Mr. Ellis's Second Amendment rights is insufficient to impose a notice requirement. *See id.* 40:4-14.

Judge Fitzpatrick ultimately found Mr. Ellis not guilty of the charge of using a handheld device while driving, but found him guilty of a misdemeanor violation of 32 C.F.R. § 234.10(a)(1) for the firearm found in the car. *Id.* 39:17-41:12. Prior to sentencing, Judge Fitzpatrick viewed body camera footage of the stop and recalled Officer Aduilar to ask questions about Mr. Ellis's behavior during the stop. *Id.* 45:17-49:4. Mr. Ellis was then sentenced to six months of probation, mandatory mental health testing and treatment, and completion of an anger management program. Doc. No. 24. Mr. Ellis was also banned from possessing a firearm while on probation. *Id.*

## STANDARD OF REVIEW

Mr. Ellis appeals his misdemeanor firearms conviction pursuant to Fed. R. Crim. P. 58(g)(2) and 18 U.S.C. § 3402. The scope of an appeal under § 3402 "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). Findings of fact are reviewed for clear error, whereas "issues of law (such as interpretation of statutes and regulations) are reviewed de novo." *United States v. Bursey*, 416 F.3d 301, 306 (4th Cir. 2005); *see also United States v. Abramski*, 706 F.3d 307, 313-14 (4th Cir. 2013). The Court reviews challenges to the sufficiency of the evidence de novo, *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005), and "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it," *Burks v. United States*, 437 U.S. 1, 17 (1978). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United*

4

*States v. Bran*, 776 F.3d 276, 279 (4th Cir. 2015) (citing *Alerre*, 430 F.3d at 693), *abrogated on other grounds by Lora v. United States*, 599 U.S. 453 (2023). A denial of a motion for acquittal is reviewed de novo. *United States v. Robinson*, 55 F.4th 390, 401 (4th Cir. 2022).

## ARGUMENT

### III. Mr. Ellis's Misdemeanor Conviction Must Be Reversed

#### A. Criminal penalties are limited to willful violations.

Mr. Ellis was charged with a misdemeanor violation of 32 C.F.R. § 234.10(a)(1), Case No. 1:25-po-200, Doc. No. 1,[1] which prohibits possessing a weapon, including a firearm, on the Pentagon reservation except by certain Government officials with prior written approval. 32 C.F.R. §§ 234.10(a)(1) and (b). This weapons prohibition is a subsection of 32 C.F.R. § 234, which governs "Conduct on the Pentagon Reservation." 32 C.F.R. § 234. The penalty section of the regulation provides that "the penalties imposed by Federal law for the commission of a Class B misdemeanor offense" are available where the defendant has "*willfully* violat[ed] any rule or regulation" provided therein. 32 C.F.R. § 234.19(a) (emphasis added). Thus, to establish a misdemeanor violation of Section 234.10(a)(1), the Government must not only prove beyond a reasonable doubt the elements specifically enumerated in the weapons provision—(1) possession of a weapon; (2) on the Pentagon reservation; (3) without prior written consent—but that Mr. Ellis's unlawful possession on the reservation was *willful*. *See United States v. Evans*, 74 F.4th 597, 604 (4th Cir. 2023) ("[W]here . . . a statute contains a general scienter provision, it typically 'modifies not only the words directly following it, but also those other statutory terms that "separate wrongful from innocent acts."'" (quoting *Ruan v. United States*, 597 U.S. 450, 458

---

[1] The Government represented at trial that Mr. Ellis faced a "max penalty [of] six months incarceration, $5,000 fine, [and] $10 special assessment. Ex. A, Trial Tr. 3:2-23. These penalties are consistent with those imposed for Class B misdemeanors under federal offense classifications. *See* 18 U.S.C. § 3559(a)(7).

5

(2022)); *see also Rehaif v. United States*, 588 U.S. 225, 228-29 ("We apply the presumption in favor of scienter even when Congress does not specify any scienter . . . . But the presumption applies with equal or greater force when Congress includes a general scienter provision in the statute itself."). The Government did not do so here, and the Magistrate Judge erred by treating the weapons regulation as lacking a *mens rea* requirement, Ex. A, Trial Tr. 40:16-21,[2] despite the general scienter provision applicable to misdemeanor charges. Therefore, the conviction must be reversed.

**B. Mr. Ellis did not willfully violate § 234.10.**

The regulation governing "Conduct on the Pentagon Reservation" does not explicitly define "willfully,"[3] *see generally* 32 C.F.R. § 234.1, but the U.S. Court of Appeals for the Fourth Circuit, in reliance on U.S. Supreme Court precedent, has adopted two criminal willfulness standards to guide courts in their interpretation of the term where it is not otherwise defined. First, there is the heightened "*Cheek/Ratzlaf*" standard, which requires that the defendant act with "knowledge of the specific criminal prohibition at issue." *United States v. Bishop*, 740 F.3d 927, 933 (4th Cir. 2014) (citing *Ratzlaf v. United States*, 510 U.S. 135 (1994) and *Cheek v. United States*, 498 U.S. 192 (1991)). The *Cheek/Ratzlaf* standard applies where the regulation "present[s] the danger of ensnaring individuals engaged in apparently innocent conduct." *Id.* (quoting *Bryan v. United States*, 524 U.S. 184, 194 (1998)). Second, the "*Bryan*" standard requires that the defendant simply "acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." *Bryan,* 524 U.S. at 193; *see also United States v. Evans*, 740 F.4th

---

[2] "But I think just from a guilt-phase perspective I think the government is right. I think the elements are clear, the elements are short, the elements are concise, and the elements have been satisfied. He did possess a firearm, he did possess a firearm without permission, he did possess a firearm on the Pentagon reservation. The facts there are clearly established beyond a reasonable doubt."
[3] The enabling statute likewise does not define "willfully." *See* 10 U.S.C. §§ 2674(c)(3) and (f).

6

597, 607 (4th Cir. 2023). This lesser standard applies where the criminal prohibition does not "present . . . risks of criminalizing otherwise-innocent behavior" because the activity at issue "would quickly strike someone of ordinary intelligence as potentially unlawful." *See Bishop*, 740 F.3d at 933.

>   *a. A criminally "willful" act is one taken with knowledge of the criminal prohibition at issue.*

Based on the facts presented at trial, Mr. Ellis did not violate the weapons regulation under either formulation of "willfulness." The circumstances of his arrest, however, demonstrate that the regulation governing "Conduct on the Pentagon Reservation," including the weapons prohibition, "present[s] the danger of ensnaring individuals engaged" not only in "apparently innocent conduct," but conduct that is protected by the Second Amendment to the U.S. Constitution. Therefore, the heightened *Cheek/Ratzlaf* standard is appropriate. *See Bryan*, 524 U.S. at 195 (emphasizing that "the danger of convicting individuals engaged in apparently innocent activity . . . motivated" the Supreme Court's decision to require knowledge of the specific criminal statute at issue in *Ratzlaf* and *Cheek*).

The Supreme Court's analysis in *Ratzlaf v. United States*, 510 U.S. 135 (1994) is particularly instructive here. In *Ratzlaf*, the Supreme Court considered whether a "defendant's purpose to circumvent a bank's reporting obligation suffices to sustain a conviction for 'willfully' violating" the prohibition against "structuring" transactions, *i.e.*, breaking up a single transaction that would otherwise be over a reporting threshold, in Section 5324 of the Money Laundering Control Act of 1986. *Ratzlaf*, 510 U.S. 135, 136 (1994). In holding that "willfulness" required that the defendant know specifically that structuring is illegal, the Court rejected the Government's contention that "'structuring is not the kind of activity that an ordinary person would engage in innocently . . . [so] [i]t is therefore 'reasonable . . . to hold a structurer responsible for evading the

reporting requirements without the need to prove specific knowledge that such evasion is unlawful.'" *Id.* at 144 (quoting Brief for United States at 29). The Court acknowledged that there are undoubtedly people who elude these reporting requirements in order to hide criminal activity, such as money laundering or tax evasion, but emphasized that "currency structuring is not inevitably nefarious" by providing several hypotheticals of individuals who would be inclined to structure a transaction for reasons other than a "desire to keep the Government in the dark." *Id.* at 144-45.[4] In other words, the *Ratzlaf* majority gave effect to the statutory "willfulness" requirement within the larger context of the purpose of the Money Laundering Control Act of 1986, so as to avoid "ensnaring" innocent structuring behavior. *See* 31 U.S.C. § 5311 (declaration of purpose).

The regulation governing "Conduct on the Pentagon Reservation" presents the same, if not an increased, danger of "ensnaring individuals engaged in apparently innocent conduct," as did the anti-structuring provision, because the regulation criminalizes a host of activities that are otherwise widely legal that only become unlawful when conducted within the poorly demarcated boundaries of the reservation. *See, e.g.,* 32 C.F.R. § 234.10 (prohibiting possessing a weapon); § 234.12 (prohibiting animals); § 234.14 (prohibiting the posting of materials); § 234.15 (prohibiting use of cameras). For example, 32 C.F.R. § 234.12, which is subject to the same general willfulness provision as the firearms prohibition, forbids bringing animals other than guide dogs onto the reservation. What is more, several public roads briefly traverse the reservation without passing through any security checkpoints or similar indicators of heightened security protocols.[5] Thus, a

---

[4] "But under the Government's construction an individual would commit a felony against the United States by making small cash deposits in small doses, fearful that the bank's reports would increase the likelihood of burglary, or in an endeavor to keep a former spouse unaware of his wealth." *Ratzlaf*, 510 U.S. at 145.

[5] There are signs on these public roads that warn a driver that he or she is "now entering the Pentagon reservation." *See, e.g.,* Ex. A., Trial Tr. 27:14-25. But, on South Rotary Road, where Mr. Ellis crossed into the Pentagon reservation, there is no opportunity to avoid entering the Pentagon reservation once the driver is in sight of the boundary sign. *Id.* 28:19-29:7. Rather, if the driver wishes to quickly exit the Pentagon reservation, he or she must continue through the Pentagon reservation along South Rotary Road and turn onto Fern Street, another public

person can easily inadvertently pass through the reservation on one of these roads, and, under the Government's construction of the regulation, commit a federal misdemeanor by simply having his or her family dog (or legally permitted firearm) in the car. Carrying one's firearm in one's car is not "inevitably nefarious," and is generally legal in the Commonwealth of Virginia. *See, e.g.,* 18 Va. Code. Ann. § 18.2-308(C)(8). Moreover, unlike transaction structuring, carrying one's legally-owned firearm for a lawful purpose is plainly protected by the U.S. Constitution. *See New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 31-32 (2022).[6] In short, the regulation, in combination with the physical reality of the Pentagon reservation and surrounding area, presents an undeniable danger of ensnaring individuals engaged in apparently innocent conduct, and the heightened *Cheek/Ratzlaf* willfulness standard applies.

Under the *Cheek/Ratzlaf* standard, the Government is required to prove beyond a reasonable doubt that Mr. Ellis knew it was illegal to bring his otherwise-legal-to-possess firearm anywhere on the Pentagon reservation, and that he voluntarily and intentionally entered the Pentagon reservation with his firearm in the car despite that knowledge. *See Ratzlaf*, 510 U.S. at 136-38; *Cheek*, 489 U.S. at 201 ("Willfulness … requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."); *see also RSM, Inc. v. Herbert*, 466 F.3d 316, 320 (4th Cir. 2006) ("Most obviously, [willfully] differentiates between deliberate and unwitting conduct . . . ."); *Prino v. Simon*, 606 F.2d 449, 451 (4th Cir. 1979) (noting that "a conscious, intentional, deliberate, voluntary decision properly is described as willful").

---

road that eventually crosses back over the boundary. *Id.* 28:19-23. Mr. Ellis was pulled over and arrested on Fern Street while attempting to exit the Pentagon reservation. *Id.* 17:14-18:20.

[6] Mr. Ellis is not arguing that the regulation prohibiting weapons on the Pentagon reservation is facially unconstitutional. Rather, Mr. Ellis is pointing out yet another reason to apply the heightened *Cheek/Ratzlaf* willfulness standard to avoid subjecting individuals innocently exercising their Second Amendment right to federal misdemeanor charges.

9

No reasonable factfinder could accept the evidence adduced at trial, even when viewed in the light most favorable to the Government, as adequate and sufficient to conclude beyond a reasonable doubt that Mr. Ellis was aware of the weapons prohibition, or that he even intentionally and voluntarily entered the reservation. *See Bran*, 776 F.3d at 279. To the contrary, the evidence compels the following conclusions: (1) the only potential notification Mr. Ellis received of the weapons prohibition is a small sign posted on the side of South Rotary Street that cannot be read even if one slows down to "just short of a stop" because the text is too small, Ex. A, Trial Tr. 28:1-23; and (2) even if Mr. Ellis had been able to read that sign—assuming the sign even contains the weapons prohibition—he had no opportunity to avoid entering the Pentagon reservation once that sign was in sight, *id.* 28:19-29:7.[7] In explaining his verdict, Judge Fitzpatrick even credited defense counsel's argument regarding the lack of notice as being "a particularly good argument here because the – it is just an unusual setup. . . . [Y]ou are on 395 one minute and you are on the Pentagon reservation the next, and it's – it's not very clear a lot of the times." *Id.* 40:4-14. Because the evidence presented at trial demonstrates an inadvertent, rather than willful, violation of 32 C.F.R. § 234.10, this Court should reverse Mr. Ellis's conviction and grant his renewed Motion for Judgment of Acquittal. In the alternative, this Court should remand the case for a new trial to determine whether Mr. Ellis willfully violated the regulation.

      *b. Mr. Ellis's conduct was not "willful" even under the lesser Bryan standard.*

Even if this Court were to apply the lesser *Bryan* willfulness standard, Mr. Ellis's conviction cannot stand because the Government did not prove beyond a reasonable doubt that

---

[7] Because photography is prohibited on the Pentagon reservation, there is no fully-legible depiction of the smaller sign in the record. Investigator Rivera was unable to read the sign while driving, so he was likewise not able to confirm that the weapons prohibition is in fact on that small sign. Ex. A, Trial Tr. 30:2-10. The Government bears the burden of proof, and they failed to establish that the sign in question actually includes the weapons prohibition. *See Mullaney v. Wilbur*, 421 U.S. 684, 702 n.31 (1975) ("Generally in a criminal case the prosecution bears both the production burden and the persuasion burden."); Ex. A, Trial Tr. 30:2-10.

Mr. Ellis "acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 193 (1998). Although the *Bryan* standard only requires that Mr. Ellis know possessing a firearm on the Pentagon reservation was illegal as a general matter, *see Bishop*, 740 F.3d at 932, the evidence presented at trial is insufficient for a factfinder to conclude beyond a reasonable doubt that Mr. Ellis entered the Pentagon reservation "in deliberate disregard of, or with plain indifference toward . . . the general unlawfulness of [his] actions." *RSM, Inc.*, 466 F.3d at 321-22. The Government presented no evidence that Mr. Ellis knew that passing through the Pentagon reservation with his legally-owned firearm in the car was generally unlawful. Rather, as noted above, the evidence shows that Mr. Ellis did not intend to go to the Pentagon, and that once it became clear he was about to enter the reservation, he had no opportunity to deviate from his route or to safely and legally dispose of his firearm so as not to bring it onto the property. Ex. A, Trial Tr. 17:14-18:16; 28:19-29:7. Thus, Mr. Ellis's actions do not constitute a deliberate disregard of, or plain indifference toward, the weapons prohibition. Because the evidence presented at trial demonstrates that Mr. Ellis had no opportunity to avoid violating 32 C.F.R. § 234.10 once he viewed the boundary sign, this Court should reverse Mr. Ellis's conviction and grant his renewed Motion for Judgment of Acquittal. In the alternative, this Court should remand the case for a new trial to determine whether Mr. Ellis willfully violated the regulation.

## **CONCLUSION**

For the foregoing reasons, Zachary Ellis respectfully requests that this Court overturn his conviction and reverse the Magistrate Judge's denial of the renewed Motion for Judgment of Acquittal. In the alternative, Mr. Ellis respectfully requests that this Court remand the case to the Magistrate Judge for a new trial.

Respectfully submitted,

Dated: June 26, 2025

*/s/ Cailyn Reilly Knapp*
Cailyn Reilly Knapp (VA Bar No. 86007)
Virginia Fergusson (*pro hac vice* forthcoming)
BAKER BOTTS L.L.P
700 K. Street N.W.
Washington, DC 20001
Tel: (202) 639-7753
Fax: (202) 585-4070
Email: cailyn.reilly.knapp@bakerbotts.com
Email: virginia.fergusson@bakerbotts.com

Brooke S. Rupert, 79729
Assistant Federal Public Defender
Officer of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
Tel: (703) 600-0849
Fax: (703) 600-0880
Email: Brooke_Rupert@fd.org

*Counsel for Defendant*