IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No: 1:25-CR-147 |
| v. ) | |
| ) | Hon. Anthony J. Trenga |
| ZACHARY ELLIS, ) | |
| ) | Hearing Date: September 3, 2025 |
| *Defendant*. ) | |

**UNITED STATES' RESPONSE TO
DEFENDANT'S OPENING BRIEF ON APPEAL**

COMES NOW the United States, by her Special Assistant United States Attorney Thomas M. Kersey, and responds in opposition to the Opening Brief on Appeal filed by counsel for Zachary Ellis ("Defendant") as follows:

**JURISDICTION**

On May 1, 2025, this case was heard before a Magistrate Judge pursuant to 18 U.S.C. §§ 3231 and 3401. After hearing evidence and argument of counsel, the Court found the Defendant guilty of possession of a weapon in violation of 32 C.F.R. § 234.10. *See* Case No. 1:25-PO-200[1] ECF No. 22. The Court entered Judgment on May 2, 2025. ECF No. 24. On May 14, 2025, Defendant filed his notice of appeal. ECF No. 27. This Court has jurisdiction over the appeal pursuant to 18 U.S.C. §§ 3231 and 3402.

**FACTUAL BACKGROUND**

On December 17, 2024, Officer Aguilar was working as a federal law-enforcement officer for the Pentagon Force Protection Agency (PFPA) on the Pentagon Reservation. The Pentagon Reservation is within the special maritime and territorial jurisdiction of the United States, and is

---

[1] All ECF citations herein are to Case No. 1:25-PO-200.

within the Eastern District of Virginia. Around 11:20 in the morning, Officer Aguilar observed a Honda traveling on South Rotary Rd. towards Fern St. Both are public highways in the Commonwealth of Virginia. Officer Aguilar observed the driver of the vehicle holding a cell phone in his right hand while driving. Officer Aguilar initiated a traffic stop, and identified the driver by his Virginia driver's license as "Zachary Ellis." There was one other passenger in the vehicle. After speaking with Defendant and informing him of the reason for the stop, Officer Aguilar subsequently discovered that Defendant had an outstanding warrant. Defendant was detained while the warrant was confirmed. Ultimately, the warrant returned as non-extraditable out of Ohio. Officer Aguilar asked Defendant if he could search the vehicle. Defendant declined the search. Officer Aguilar spoke to the passenger, who stated that Defendant had a firearm in the vehicle. Officer Aguilar searched the vehicle and discovered a loaded 9mm Smith & Wesson firearm and a small amount of marijuana.[2] Officer Aguilar then placed Defendant under arrest and issued Defendant two citations, for violation of 32 C.F.R. § 234.10 (possession of a weapon) and 32 C.F.R. § 234.17 adopting Va. Code 46.2-818.2 (using a handheld communication device while driving). ECF Nos. 1 & 3.

## PROCEDURAL HISTORY

Defendant was given a mandatory court appearance of February 6, 2025. On that date, Defendant appeared and was appointed counsel. ECF No. 4. The matter was continued to March 6, 2025. ECF No. 6. On March 6, 2025, the parties appeared, and the matter was continued to March 20, 2025, for status. ECF Nos. 10, 11, 12. On March 20, 2025, the parties again appeared, and the matter was set for trial on May 1, 2025. ECF Nos. 15, 16.

On May 1, 2025, the parties appeared and conducted a bench trial. The United States

---

[2] Defendant's brief characterizes it as "legal marijuana." This is not accurate, as marijuana is still federally illegal.

introduced evidence by way of testimony and exhibits. ECF No. 22. After the United States rested her case, Defendant made a Rule 29 motion. *Id*. The Court denied that motion. *Id*. Defendant then introduced evidence by way of testimony and exhibits, and rested. *Id*. After Defendant rested his case, he renewed his Rule 29 motion, which the Court again denied. After hearing evidence and argument of counsel, Defendant was found guilty of the weapons violation, in violation of 32 C.F.R. § 234.10(a)(1), and was sentenced to 6 months' probation with conditions for mental health, anger management, and a bar from possessing firearms while on probation. *Id*.

## **STANDARD OF REVIEW**

Defendant appeals his conviction pursuant to 18 U.S.C. § 3402 and Fed. R. Crim. P. 58(g)(2). "In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402.

In reviewing the decision of a magistrate judge, a district court applies the same standard of review as would a court of appeals reviewing a decision of a district court. Fed. R. Crim. P. 58(g)(2)(D). Accordingly, the magistrate judge's conclusions of law are reviewed *de novo* and her factual conclusions are reviewed for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Bursey*, 416 F.3d 301, 306 (4th Cir. 2005); *United States v. McKinnon*, 92 F.3d 244, 246 (4th Cir. 1996); *United States v. Crepeau*, No. 107CR242, 2007 WL 2301541, at *1 (E.D. Va. Aug. 7, 2007), *aff'd*, 267 F. App'x 224 (4th Cir. 2008).

When reviewing the sufficiency of the evidence following a conviction, the Court views the evidence and the inferences drawn therefrom in the light most favorable to the Government. *Bursey*, 416 F.3d at 306. The Court will sustain the verdict where "*any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002) (emphasis added) (citing *United States v. Myers*, 280 F.3d 407, 415 (4th Cir. 2002)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Twinn*, 369 F. Supp. 2d 721, 723 (E.D. Va. 2005).

## ARGUMENT

### A. "WILFULLNESS" STANDARD DEFINED

In *RSM, Inc. v. Herbert*, 466 F.3d 316 (4th Cir. 2006), the U.S. Court of Appeals for the Fourth Circuit provided a comprehensive explanation of the various possible meanings of the term "willfully":

> We, of course, recognize that "willfully" is "a word of many meanings whose construction is often dependent on the context in which it appears." [*Bryan v. United States*, 524 U.S. 184, 191 (1998).] At its core, however, the term describes conduct that results from an exercise of the will, distinguishing "intentional, knowing, or voluntary" action from that which is "accidental" or inadvertent. [*United States v. Illinois Central R.R.*, 303 U.S. 239, 243 (1938)]; *see also* [*Bryan*, 524 U.S. at 191] ("Most obviously, [willfully] differentiates between deliberate and unwitting conduct...."); *Prino v. Simon*, 606 F.2d 449, 451 (4th Cir.1979) (noting that "a conscious, intentional, deliberate, voluntary decision properly is described as willful"). . . .
> Accommodating the fundamental principle that ignorance of the law is no excuse, the Supreme Court in *Bryan*—construing "willfully" in § 924(a)(1)(D)—rejected a definition of "willfully" that required the defendant to have knowledge of *the law which he is accused of violating.* [524 U.S. at 196.] Rather, a more general knowledge "that the conduct is unlawful is all that is required." *Id.* The Court recognized, though, that the willfulness requirement was *also* satisfied by a showing of, among other things, a disregard of or an indifference to known legal obligations. [*Id.* at 197–99]; *see also Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 497 (7th Cir.2006) (finding "willfulness" when a licensee "knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements"); *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464–65 (6th Cir.2004) ("[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA"); *cf. Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274, 1277 (11th Cir.2005) ("[A] showing of purposeful disregard of or plain indifference to the laws and regulations imposed on firearms dealers shows willfulness for purposes of § 923(d)(1)(C)").

4

> Thus, when determining the willfulness of conduct, we must determine whether the acts were committed in deliberate disregard of, or with plain indifference toward, either known legal obligations or the general unlawfulness of the actions.

*RSM, Inc.*, 466 F.3d at 320–22.

Later, in *United States v. Danielczyk*, 917 F. Supp. 2d 573 (E.D. Va. 2013), the Honorable James C. Cacheris of this Court clarified that there are 3 different "willfulness" standards in criminal law:

> First, there is the *Cheek/Ratzlaf* standard, which requires that the defendant know that he is violating an actual law. This standard applies "where the obscurity or complexity" of a criminal statute "may prevent individuals from realizing that seemingly innocent acts are, in fact, criminal," and thus willfulness requires the defendant to have known that he was violating a specific law. *United States v. George*, 386 F.3d 383, 390 (2nd Cir.2004). Second, the *Bryan* standard simply requires that the defendant possess "knowledge of the conduct's general unlawfulness." *Id.* at 392. Third, the baseline standard simply requires that the defendant know what he is doing, regardless of his awareness of the law, and it applies where conduct by its nature could not be participated in innocently. *Id.* at 393–94.

*Danielczyk*, 917 F. Supp. 2d at 576–77.

Defendant suggests that this Court should find that the *Cheek/Ratzlaf* standard applies, under the theory that individuals engaged in innocent conduct may otherwise be in violation of the law. That is the wrong analysis. There is no "otherwise innocent behavior" analogous in this case. Individuals carrying weapons may not do so in federal buildings (18 U.S.C. § 930), and that includes the Pentagon Reservation under 32 C.F.R. § 234.10. The Pentagon's regulations are short and simple, as the magistrate judge commented, a far cry from the "obscurity or complexity" reasoning to apply the *Cheek/Ratzlaf* standard.

The United States submits that the appropriate standard is the baseline standard, that Defendant "know what he is doing, regardless of his awareness of the law, and it applies where conduct by its nature could not be participated in innocently." *Id*.

### 1. *Cheek/Ratzlaf* Standard

The *Cheek/Ratzlaf* standard, requiring a defendant to know he is violating an actual law, applies "where the obscurity or complexity" of a criminal statute "may prevent individuals from realizing that seemingly innocent acts are, in fact, criminal," *George,* 386 F.3d at 390. The *Cheek/Ratzlaf* standard exists because of "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan*, 524 U.S. at 194. It is the exception to the traditional rule that ignorance of the law is no excuse. *Id*.

Defendant submits that this standard should control. The United States submits that it clearly should not. As the trial judge noted, "the elements are clear, the elements are short, the elements are concise, and the elements have been satisfied." Def. Ex. A. Trial Tr. 40:16-21. The law is not in any way obscure or complex, which would call for the use of the *Cheek/Ratzlaf* standard. That fact should caution this Court specifically *not* to adopt that standard. Further, the cases cited by Defendant do have some non-criminal behavior, such as a bank's reporting obligations. That argument misses the point, though, as the regulations in question specifically apply to one geographic area, not different types of conduct. It is simply not reasonable to conclude that this criminal statute, which is clear and concise, is so obscure or complex that it prevents an individual from realizing an innocent act is criminal. It prohibits conduct at one location and one location only—the Pentagon Reservation. There is no danger of ensnaring individuals engaged in innocent conduct.

### 2. *Bryan* Standard

Defendant then argues, in the alternative, that the *Bryan* standard should apply. Under this standard, to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan*, 524 U.S. at 191–92.

*United States v. Bishop*, 740 F.3d 927, 933 (4th Cir. 2014). Should this Court find that the *Bryan* standard applies here, the magistrate judge's verdict must be sustained. At the outset, the Court must sustain the verdict if *any* rational trier of fact could have found the elements beyond a reasonable doubt, and it's worth nothing the evidence is viewed in the light most favorable to the United States. Defendant's brief argues that Defendant did not intend to go to the Pentagon Reservation, despite the fact Defendant was driving and affirmatively took actions to take the exit clearly marked "Pentagon." It is immaterial that once he took that exit, there is no opportunity to deviate from that route. Defendant had every opportunity to avoid entering the Pentagon Reservation with a firearm, as he could have taken any number of other exits.

Defendant may argue that the route taken is the most convenient, or was suggested by Google Maps, or some combination thereof. Again, this argument is immaterial. Defendant was in control of the motor vehicle, and, while in operation of that vehicle, took the exit marked "Pentagon." In fact, if he was using Fern St. as nothing more than a shortcut to get to Costco, his actions clearly show a plain indifference to the weapons prohibition. It would show Defendant thinks so little of the Pentagon Reservation that the law does not apply to those using the Reservation as their thoroughfare. Defendant's entire argument rests on the idea that convenience is of the utmost importance, and anyone using federal property to save a few minutes on their route need not comply with any rules or regulations thereon.

### 3.  Baseline Standard

The baseline standard simply requires that the defendant know what he is doing, regardless of his awareness of the law, and it applies where conduct by its nature could not be participated in innocently. *Danielczyk*, 917 F. Supp. 2d at 576–77.

This is the most appropriate standard to apply in this case. The regulations in question do

7

not prohibit conduct across the board; rather they only prohibit conduct in one place. Given that, the traditional rule that ignorance of the law is no excuse should hold. Further, the conduct, by its nature, cannot be participated in innocently. The conduct prohibited is not solely possessing a firearm, the conduct is possessing a firearm specifically on the Pentagon Reservation.

### B. APPELLATE REVIEW

This Court is to review the findings of fact of the Magistrate Court for clear error, and will view the sufficiency of the evidence in the light most favorable to the Government. Most importantly, the Court will sustain the verdict where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lomax*, 293 F.3d at 705.

Defendant's argument as to the evidentiary conclusions is incorrect. Defendant is once again raising a notice requirement that simply does not exist. If this were charged under 18 U.S.C. § 930, it certainly may apply, or be relevant. The simple fact remains that, as charged, there is no notice requirement, and any arguments about it, either legally or factually, are not relevant.

The second conclusion Defendant is mistaken about is that he would be unable to avoid entering the Pentagon Reservation once the sign was in sight. This, again, is not true. Defendant's own witness testified as to the exit sign, affirming that the exit itself has a "big green sign and in big white letters it says 'Pentagon'." Def. Ex. A. Trial Tr. 30:19-22. Defendant's actions as the driver of the motor vehicle were a "conscious, intentional, deliberate, voluntary decision properly described as willful." *Prino v. Simon*, 606 F.2d at 451.

The evidence clearly shows that Defendant possessed a firearm on the Pentagon Reservation. The evidence likewise shows that Defendant, who was driving the motor vehicle, took an exit onto the Pentagon Reservation. Notwithstanding any notice arguments, Defendant

clearly knew the exit he was taking led onto the Pentagon Reservation.

Finally, this Court should sustain the verdict because any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Lomax*, 293 F.3d at 705.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, the Defendant's appeal must be denied, and the decision of the Magistrate Court should be affirmed.

Respectfully submitted,

Erik S. Siebert
United States Attorney

By:  _____/s/_____
Thomas M. Kersey   VSB #93602
Special Assistant United States Attorney (Pentagon)
Jordan Harvey
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office        (703) 697-6664
Cell           (571) 329-1527
Email         thomas.m.kersey.civ@mail.mil

**CERTIFICATE OF SERVICE**

    I certify that on July _____17\_\_\_\_\_, 2025, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy of this document to be transmitted to counsel of record.

By: _____/s/_____
Thomas M. Kersey   VSB #93602
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office          (703) 697-6664
Cell             (571) 329-1527
Email          thomas.m.kersey.civ@mail.mil